UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AJAY AJAY,<br><br>                    Petitioner,<br><br>          v.<br><br>ENFORCEMENT AND REMOVAL<br>OPERATIONS, et al.,<br><br>                    Respondents. | No.  1:26-cv-0993-DC-CKD P<br><br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Ajay Ajay is detained by Immigrations and Customs Enforcement ("ICE") and seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner's first amended petition naming his custodian and others as respondents, first amended motion for preliminary injunction, respondents' opposition to both, and petitioner's reply are before the court. (ECF Nos. 11, 15, 17, 18.) This matter was referred to the undersigned by operation of Local Rule 302(c)(17) and 28 U.S.C. § 636(b)(1). For the following reasons, the undersigned recommends the court consolidate the motion for preliminary injunction with the merits of the amended petition and grant the amended petition.

## I.      Background

Petitioner is a national of India and a non-citizen who entered the United States on or about August 29, 2024. (ECF No. 17-1 at 1-3.) Petitioner was placed in expedited removal proceedings and charged as inadmissible. (Id. at 3.) In regard to his present detention, petitioner

1

has been continuously detained since September 24, 2025, when he was served with a notice to appear on October 6, 2025. (ECF No. 1-1; ECF No. 15 at 3; ECF No. 18 at 4.) On November 5, 2025, petitioner was ordered removed to India. (ECF No. 17-2.)

The pending amended petition and amended motion for preliminary injunction contain minimal factual allegations, but petitioner alleges he has been continuously detained by ICE for a period of more than five months, since September 24, 2025. (ECF No. 15 at 3; ECF No. 18 at 4.) The amended petition brings a single claim for relief asserting a violation of petitioner's Fifth Amendment right to due process of law. (ECF No. 11 at 6.) Through the amended petition and amended motion for preliminary injunctive relief, petitioner seeks immediate release from custody. (Id. at 7; ECF No. 15 at 6-7.)

The amended petition and amended motion for preliminary injunction initially alleged petitioner is detained under 8 U.S.C. § 1231(a) "pursuant to a final order of removal entered on November 5, 2025," and that he timely appealed that order to the Board of Immigration Appeals ("BIA"). (ECF No. 11 at 3-4, 6; ECF No. 15 at 3.) The amended petition initially alleged petitioner has a "Form I-360 Special Immigrant Juvenile Status ("SIJS")" pending before U.S. Citizenship and Immigration Services, and thus that respondents are legally barred from executing his removal on account of the pending SIJS petition. (Id.) Thus, petitioner alleged, removal is not reasonably foreseeable, and his continued detention has become indefinite and unconstitutional. (ECF No. 11 at 6; ECF No. 15 at 2.)

Respondents filed a combined opposition to the amended petition and amended motion for a preliminary injunction. (ECF No. 17.) Respondents argue petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Id. at 2.) Respondents argue petitioner can be removed while an SIJS application is pending, as SIJS does not itself alter the immigration laws he is subject to unless and until he applies for and receives an adjustment of status, at which point he would be considered "admitted" to the United States. (Id. at 3.) Respondents assert, however, there is an automatic stay of removal in place because of petitioner's timely appeal of his order of removal with the Board of Immigration Appeals, which remains pending. (Id.)

////

2

In reply, petitioner does not dispute respondents' assertion that he is currently detained under 8 U.S.C. § 1225(b)(2). (ECF No. 18 at 2.) Petitioner also argues in reply that his SIJS petition has been "approved" (rather than still pending) and asserts he has no criminal history. (Id.; see also ECF No. 1-4 (indicating "approval" of petitioner's Form I-360 on October 30, 2025.)) Under these circumstances, petitioner argues, continued mandatory detention without individualized review violates the Due Process Clause. (Id. at 3.)

**II.     Discussion**

To determine whether petitioner's detention is authorized, the court first looks to the statutory provision purporting to confer authority for his detention. See Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Although the amended petition alleged petitioner was detained under 8 U.S.C. § 1231(a), in the reply brief, petitioner does not dispute respondents' assertion that he is instead detained under 8 U.S.C. § 1225(b)(2). (ECF No. 17 at 2; ECF No. 18 at 2.)

It is well established that the "post-removal" detention period under 8 U.S.C. § 1231(a) does not begin until a non-citizen's appeal of his removal order is resolved by the BIA. See Johnson v. Guzman Chavez, 594 U.S. 523, 535 (2021) (an order of removal becomes "administratively final" within the meaning of 8 U.S.C. § 1231(a)(1)(B)(i) when "the agency's review proceedings" are complete). Petitioner's removal proceedings are still pending because his appeal to the BIA is still pending, and he is not currently subject to detention under § 1231(a). The court next considers whether petitioner is detained under § 1226(a) or § 1225, instead.

Section 1226(a) applies to non-citizens who are "detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(a) "is the default detention statute for noncitizens in removal proceedings[.]" Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). Under § 1226(a), the government has discretion whether to release or detain the individual, subject to "extensive procedural protections… including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Rodriguez

3

Diaz v. Garland, 53 F.4th 1189, 1202 (9th Cir. 2022).

Section 1225, in contrast, applies to noncitizens who are "applicants for admission." An applicant for admission is a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)).

Here, no party has informed the court regarding petitioner's custody status between the time he was initially arrested near the border on August 30, 2024 (ECF No. 17-1 at 2), and the date on which he was ordered removed, on November 5, 2025. However, because petitioner alleges he has been in continuous custody for a time period of "more than five months" since September 24, 2025 (see ECF No. 15 at 3; ECF No. 18 at 4), it appears petitioner was released sometime after August 30, 2024, and prior to being re-detained on September 24, 2025. Consistent with such an inference, respondents reference petitioner's "prior release in the discretion of DHS" in their argument in opposition to the amended petition and amended motion for preliminary injunction. (ECF No. 17 at 3.) Respondents do not assert petitioner has failed to comply with any conditions of release, do not assert petitioner has committed any crimes, and do not proffer any facts to suggest he is a danger to the public or a flight risk.

Courts nationwide, including courts in this district, have overwhelmingly rejected respondents' legal position that § 1225(b) is the applicable detention authority for all "applicants for admission." Herna v. Chesnut, No. 1:25-CV-01919-JLT-SAB (HC), 2026 WL 177801, at *3 (E.D. Cal. Jan. 22, 2026) (collecting cases). A theory of petitioner's immigration status as being subject to mandatory detention under § 1225 does not comport with the apparent circumstance that he was released into the interior of the United States at some point, until being re-detained on September 24, 2025. See Altin v. Chestnut, No. 1:26-CV-00792-DC-CSK (HC), 2026 WL 309563, at *5 (E.D. Cal. Feb. 5, 2026) ("courts, including this court, have generally held that § 1226 rather than § 1225 is the appropriate section to apply in cases in which a noncitizen is already living in the United States"); Mendoza v. Warden of the Golden State Annex, No. 1:25-CV-2030 CSK, 2026 WL 310116, at *3 (E.D. Cal. Feb. 5, 2026) (citing collected cases finding that non-citizens in the interior of the country are not "seeking admission" within the meaning of

4

§ 1225).[1]

Based on the circumstance of petitioner being apparently released into the interior of the United States where he resided for some period of time before being re-detained on September 24, 2025, the court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme." Enriquez Escarcega, Petitioner, v. Warden of the Golden State Annex Faciity, No. 1:26-CV-01012 DAD SCR, 2026 WL 480500, at *2 (E.D. Cal. Feb. 20, 2026); Cajina v. Wofford, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) ("The court therefore need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme."). Thus, the undersigned focuses on the Fifth Amendment due process claim and finds petitioner's present detention violates his due process rights.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. CONST. AMEND. V. It is firmly established that these protections extend to noncitizens present in the United States. See Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."); Wong Wing v. U.S., 163 U.S. 228, 238 (1896) ("It must be concluded that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth Amendment], and that even [non-citizens] shall not ... be deprived of life, liberty, or

---

[1] In addition, although petitioner initially alleged his SIJS petition was pending (ECF No. 11 at 4), in reply, he asserts his SIJS petition has been "approved." (ECF No. 18 at 4; see also ECF No. 1-4.) Some courts have found a non-citizen being granted such status "weighs in favor of finding petitioner is not detained under § 1225(b)(2)" and weighs in favor of finding instead that the petitioner is detained under § 1226(a). See Quinonez Torres v. Hermilloso, et al., No. 2:26-CV-00076-TLF, 2026 WL 547591, at *5 (W.D. Wash. Feb. 23, 2026) (citing collected cases). However, the status of petitioner's SIJS petition remains unclear on the present record and petitioner does not allege he has been granted "deferred action" in connection with his SIJS petition. See De Sousa v. Dir. of USCIS, 755 F. Supp. 3d 1266, 1270 (N.D. Cal. 2024) ("Deferred action" refers to an "exercise in administrative discretion" under which "no action will thereafter be taken to proceed" with the applicant's removal from the United States); Sepulveda Ayala v. Bondi, 794 F. Supp. 3d 901, 912 ("deferred action prevents recipients' removal from the United States") (W.D. Wash. July 24, 2025).

5

property without due process of law.").

Courts analyze procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). The Due Process Clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary. See Zadvydas, 533 U.S. at 693.

Having determined that petitioner has a protected liberty interest in continued release having been released at some point previously, the court proceeds to determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To make that determination, the court applies the test established in Mathews v. Eldridge, 424 U.S. 319 (1976). The Mathews test considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. 424 U.S. at 335.

Considering the first Mathews factor, petitioner has a private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The undersigned has determined petitioner was released from custody for some period of time prior to being re-detained on his current detention exceeding five months. Petitioner's prior release from custody creates a powerful interest for him in his continued liberty. See Doe v Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025). Thus, this factor favors finding petitioner's private interest has been affected by his detention.

The second Mathews factor, the risk of erroneous deprivation to petitioner, also weighs in his favor. See A.E. v. Andrews, No. 25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention is "nonpunitive in purpose and effect" and is justified when a noncitizen presents as a danger to the community or risk of flight. Zadvydas, 533 U.S. at 690; Padilla v. U.S. Immigr. & Customs Enf't,

704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Petitioner has been detained for more than five months without being provided a bond hearing before an immigration judge to evaluate his dangerousness and/or flight risk. The undersigned concludes "the probable value of additional procedural safeguards" including a bond hearing—which should have occurred before his re-detention—is high. A.E., 2025 WL 1424382, at *5.

Turning to the third Mathews factor, the court acknowledges the government has an interest in the steady enforcement of its immigration laws but also recognizes the government's interest in re-detaining petitioner without any procedural protections is substantially "low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d at 1094. Custody hearings in immigration court are routine and impose a "minimal" cost on the government. Doe, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without [any procedural protections] is low." Ortega, 415 F. Supp. 3d at 970.

On balance, the Mathews factors favoring petitioner show due process required that he be provided a bond hearing prior to his re-detention. "[A] pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 71 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025). Respondents point to no reasons why a pre-deprivation hearing could not be held and provide no evidence warranting petitioner's re-detention without a hearing.

Accordingly, the court should find petitioner's Fifth Amendment due process rights have been violated. Given that the amended petition and the amended motion for preliminary injunction raise the same due process claim and seek the same relief, and for purposes of judicial efficiency, the undersigned recommends "advanc[ing] the trial on the merits and consolidat[ing] it with" the motion for preliminary injunction. Fed. R. Civ. P. 65(a)(2); see also Prior v. Chestnut, No. 1:25-CV-01131-JLT-EPG-HC, 2026 WL 309560, at *3 (E.D. Cal. Feb. 5, 2026) (considering preliminary injunction and merits of habeas petition simultaneously); 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require.").

/////

7

**III.    Recommendation**

In accordance with the above, IT IS RECOMMENDED as follows:

1.  Petitioner's first amended motion for preliminary injunction (ECF No. 15) be granted and petitioner's initial motion for preliminary injunction (ECF No. 3) be denied as moot.

2.  Petitioner's first amended petition for writ of habeas corpus (ECF No. 11) be granted, as follows:

    a. Respondents be ordered to release petitioner immediately with the same conditions he was subject to immediately prior to his re-detention on September 24, 2025.

    b. Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless they provide 7 days' notice to petitioner and a pre-deprivation bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered; and

3.  The Clerk of the Court be directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 4, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8 ajay0993.mer